RECEIVED
IN MONROE, LA

JAN 1 8 2008

ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA

**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF LOUISIANA**

**MONROE DIVISION**

| | |
|---|---|
| **ANTOINE GRAY** | **CIVIL ACTION NO. 06-1070** |
| **VERSUS** | **JUDGE ROBERT G. JAMES** |
| **EDDIE HORTON, TIM COX, AND TOWN OF BERNICE** | **MAG. JUDGE KAREN L. HAYES** |

**RULING**

Pending before the Court is a Motion for Summary Judgment [Doc. No. 13] filed by

Defendants Eddie Horton ("Horton"), Tim Cox ("Cox"), and Town of Bernice. Defendants

move the Court to dismiss Plaintiff Antoine Gray's federal claims under 42 U.S.C. § 1983 and

state law claims of assault, battery, intentional infliction of emotional distress, and false

imprisonment.

**I.      FACTS AND PROCEDURAL HISTORY**

On June 24, 2005, Horton, a police officer for the Town of Bernice, was on patrol on Elm

Street. Horton observed a yellow Chevrolet Caprice making a left turn from Sixth Street onto

Elm Street. He avers that the vehicle was moving approximately fifteen (15) miles per hour as it

proceeded through a stop sign. The driver of the vehicle, Antoine Gray[1] ("Gray"), denies that he

ran the stop sign.[2]

---

[1]At the time, Horton did not know who was driving the vehicle.

[2]Gray does not contest Defendants' Statement of Undisputed Facts except as follows: "1.
Validity of initial stop. Gray contends, under oath, that he committed no traffic infraction to
justify his stop. That contention is disputed by Defendants." [Doc. No. 21]. Having reviewed
Defendants' Statement of Undisputed Facts, the Court finds them to be in accordance with the

1

    Horton followed the Chevrolet Caprice as it made a right turn onto Fifth Street and a left turn into the parking lot of the Bernice Super Value at 401 Plum Street. As Horton entered the parking lot, he activated his overhead emergency lights. Gray stopped his vehicle in front of three (3) coke machines in front of the Super Value Store. Gray exited his vehicle, turned to look at Horton, and reached back inside his vehicle. Gray then turned and walked to the coke machine.

    Horton informed Gray who he was and the reason for the traffic stop--that Gray had failed to yield at the stop sign at the intersection of Sixth and Elm Streets. Gray advised Horton that he did not run a stop sign and that it was "bull shit." At this point, Horton asked Gray for his driver's license, registration, and proof of insurance. Gray told him that those documents were in his car. Gray then walked to another coke machine.

    Horton had requested back-up from Cox, another police office for the Town of Bernice. Cox had now arrived at the scene. Horton asked Gray once again for his identification and paperwork, and as he did so, Gray came towards him. Horton retrieved his taser as Gray reached inside his left front pocket.[3] Cox grabbed Gray's left hand and handcuffed him. Horton advised Gray that he was under arrest for running a stop sign and resisting an officer.

    Gray began to remove his wallet from his pocket, and Cox took the wallet from him. Both officers then advised Gray to sit down on the curb, but he continued to resist the officers' instructions. Finally, Gray sat down, but refused to cross his legs as instructed. Horton then stood Gray up and escorted him to his vehicle where he read him his rights.

_____

record evidence in this matter and accepts them as true.

    [3]Gray does not mention reaching into his left front pocket in his deposition.

2

Cox called in Gray's driver's license number and learned that it was suspended, pursuant to an out-of-state affidavit.  Upon being advised of this, Horton went back to his vehicle where he had placed Gray and told him that he was also being charged with driving under suspension. Cox called for a wrecker to tow the vehicle that Gray was driving.

While all of this was occurring on the scene, approximately nine family members and/or friends of Gray arrived, cursed at the officers, and otherwise interfered.  Horton transported Gray to Union Parish Detention Center for booking.

Cox did an inventory of the contents of Gray's vehicle.  He allowed Gray's girlfriend to roll up the driver's window, which was difficult to roll up, so the vehicle could be secured until the wrecker arrived.

Gray received no physical injury, other than some soreness from the handcuffs, and sought no medical treatment.

The charges against Gray were ultimately dismissed.

## II.    LAW AND ANALYSIS

### A.    Motions for Summary Judgment

Summary judgment is appropriate only when the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show that there are no genuine issues as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The moving party bears the initial burden of informing the court of the basis for its motion by identifying portions of the record which highlight the absence of genuine issues of material fact.  Topalian v. Ehrmann, 954 F.2d 1125, 1132 (5th Cir.  1992). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the

3

lawsuit under applicable law in the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. Id. The moving party cannot satisfy its initial burden simply by setting forth conclusory statements that the nonmoving party has no evidence to prove its case. Ashe v. Corley, 992 F.2d 540, 543 (5th Cir. 1993).

If the moving party can meet the initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial. Norman v. Apache Corp., 19 F.3d 1017, 1023 (5th Cir. 1994). The nonmoving party must show more than "some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In evaluating the evidence tendered by the parties, the court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. Anderson, 477 U.S. at 255.

### B. Claims Against the Town of Bernice

Gray has asserted claims against the Town of Bernice under 42 U.S.C. § 1983. Municipalities are not vicariously liable for the actions of their employees under § 1983. Baker v. Putnal, 75 F.3d 190, 200 (5th Cir. 1996). In order to establish § 1983 liability, a plaintiff must prove the existence of a policy maker, an official policy or custom, and a violation of the plaintiff's constitutional rights by the use of the policy or custom. See Monell v. Department of Social Services of City of New York, 436 U.S. 658, 690-94 (1978); Piotrowski v. City of Houston, 237 F.3d 567, 578 (5th Cir. 2001). A plaintiff who asserts a claim based on a municipality's policy of hiring or training must prove that the " training or hiring procedures of the municipality's policy maker were inadequate, the municipality's policy maker was

4

deliberately indifferent in adopting the hiring or training policy, and the inadequate hiring or training policy directly caused the plaintiff's injury." Baker, 75 F.3d at 200. "Where the alleged policy is one of inadequate police training, the plaintiff can only satisfy the first element of municipal liability if the failure to train satisfies the 'deliberate indifference' standard that applies to supervisor liability." Id. (citing Benavides v. County of Wilson, 955 F.2d 968, 972 (5th Cir. 1992)).

Horton and Cox presented evidence that they completed the state-mandated training programs of the State of Louisiana for police officers. However, Gray has presented no evidence to show that the Town of Bernice had a policy or custom that resulted in his constitutional injury. In support of his opposition, Gray cites the Court only to his deposition, where he admitted that he has no evidence regarding the policies and procedures of the Town of Bernice. Under these facts, Defendants' Motion for Summary Judgment is GRANTED, and Gray's claims against the Town of Bernice are DISMISSED WITH PREJUDICE.

### C.    Official Capacity Claims Against Horton and Cox

Gray brought § 1983 claims against Horton and Cox in both their official and individual capacities. [Doc. No. 1, ¶ 9].

In official capacity lawsuits under § 1983, "it is a condition precedent to liability . . . that the challenged conduct of the individual . . . be tied to an official . . . custom or policy, formal or informal." Johnson v. Rodriguez, 110 F.3d 299, 312 (5th Cir. 1997); see also Kentucky v. Graham, 473 U.S. 159, 165-66 (1985). This is so because "suits against the officers in their official capacity are basically suits against the municipality." Daniel v. Compass, 212 Fed. Appx. 262, 265 (5th Cir. 2006) (citing Monell, 436 U.S. at 690).

5

Gray failed to point to any custom or policy by the Town of Bernice that resulted in the alleged unconstitutional actions of Cox and Horton. Thus, Gray's official capacity claims against the individual officers fail as well. Defendants' Motion for Summary Judgment on the official capacity claims against Horton and Cox is also GRANTED, and those claims are DISMISSED WITH PREJUDICE.[4]

## D.    Individual Capacity Claims Against Cox and Horton

Gray also asserts § 1983 claims against Cox and Horton in their individual capacities. Gray contends that Cox and Horton violated his constitutional rights under the Fourth and Fourteenth Amendments by unlawfully arresting and detaining him, threatening him with a weapon, verbally accosting him, illegally searching his vehicle, causing damage to his vehicle, and using excessive force.

Section 1983 provides individuals with a civil remedy for the violation of constitutional rights. To establish a § 1983 violation, the plaintiff must show that a person has deprived him of a federal constitutional or statutory right acting under color of state law. Gomez v. Toledo, 446 U.S. 635, 640 (1980).

Defendants do not deny that Horton and Cox were acting under color of state law in their capacity as a police officers for the Town of Bernice. However, Defendants deny that Horton and Cox deprived Gray of a constitutional right and contend that Cox and Horton are entitled to

_____

[4]Defendants did not make the argument that is the specific basis for this ruling. However, Defendants did argue that the claims against the Town of Bernice should be dismissed for failure to identify a policy or custom of the Town that resulted in the alleged constitutional violations. Gray was given ample opportunity to respond to this argument and failed to identify, much less provide evidence, of any such policy or custom. Accordingly, the Court finds that summary judgment is appropriate for the reasons stated.

6

qualified immunity.

"Police officers, like other public officials acting within the scope of their official duties, are shielded from claims of civil liability, including § 1983 claims, by qualified immunity." Morris v. Dillard Department Stores, Inc., 277 F.3d 743, 753 (5th Cir. 2001). In reviewing a police officer's claim of qualified immunity, the Supreme Court instructs that the court must engage in a two-step inquiry. The court must first address the constitutional issue: whether the facts alleged, "'[t]aken in the light most favorable to the party asserting injury,'" are sufficient to "'show the officer's conduct violated a constitutional right.'" Brosseau v. Haugen, 543 U.S. 194, 197 (2004) (per curiam)(quoting Saucier v. Katz, 533 U.S. 194, 201 (2001)). Assuming that the plaintiff has raised a genuine issue of material fact for trial on the constitutional issue, the court must then address the qualified immunity issue: whether it was clearly established that the officer was violating an individual's constitutional rights. Id. at 199.

In his opposition memorandum, Gray contends that "he was unlawfully stopped, detained and jailed and that his vehicle was unlawfully searched, and the interior was damaged." [Doc. No. 21]. However, the only fact he disputes is "the basis for the stop." He argues that he "was not prosecuted for running a stop sign" and that he "categorically denies running the stop sign." Therefore, he contends that the "initial wrongful stop" is "disputed" and "material" and that the "additional violations flow" from it.[5]

As a preliminary matter, although he cites the Fourth and Fourteenth Amendments in his

---

[5]Gray also states that he "adopts [his] deposition" in support of his opposition to Motion for Summary Judgment. Gray cannot meet his burden in opposing a motion for summary judgment merely by referring the Court to his entire deposition without even suggesting how it supports his opposition. Nevertheless, the Court has reviewed the entire record in this matter, including Gray's deposition.

7

Complaint, Gray's allegations of an unlawful arrest, search and seizure, and use of excessive force are properly analyzed under cases interpreting the Fourth Amendment. See Blackwell v. Barton, 34 F.3d 298, 302 (5th Cir. 1994) ("We hold that Blackwell's section 1983 claim against Barton for illegal arrest and detention is properly considered under the Fourth Amendment, the more specific constitutional right implicated by her allegations."); Estep v. Dallas County, Tex. 310 F.3d 353, 358 (5th Cir. 2002) (Fourth Amendment guarantees citizens the right to be free from illegal searches and seizures); Graham v. Connor, 490 U.S. 386, 394 (1989) ("Where, as here, the excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment, which guarantees citizens the right 'to be secure in their persons . . . against unreasonable . . . . seizures' of the person.") (citation omitted).

### 1. Unlawful Arrest and Detention

Viewing the facts in a light most favorable to Gray, as is required, Horton and Cox did not have probable cause to detain and arrest Gray. Gray has disputed, under oath, that he ran a stop sign, and Horton did not state any other basis for the stop. Therefore, if the Court believes Gray's version of events at trial[6], Horton and Cox had no probable cause to arrest Gray.

Horton and Cox also placed Gray under arrest for resisting arrest.[7] "If there was probable cause for any of the charges made . . . then the *arrest* was supported by probable cause." Wells v. Bonner, 45 F.3d 90, 95 (5th Cir.1995) (emphasis in original). However, Louisiana law is clear

---

[6]Because this matter is set for bench trial, the Court serves as trier of fact.

[7]Cox participated in Gray's arrest by handcuffing him while Horton advised Gray of the reasons for the arrest.

that a person has a right to resist an unlawful arrest. See White v. Morris, 345 So.2d 461

(La.1977); Melancon v. Trahan, 94-26 (La. App. 3 Cir. 10/5/94);645 So.2d 722, 727; see also

State v. Knowles, 40,324 (La.App. 2 Cir. 12/30/05); 917 So.2d 1262 ("Even if we were to

conclude that defendant's conduct constituted resisting an officer, because we conclude that the

stop and subsequent search was unlawful, defendant had every right to resist an illegal restraint of

his liberty. An individual in Louisiana has a time-honored right to resist an illegal arrest.") (citing

City of Monroe v. Goldston, 95-0315 (La.9/29/95); 661 So.2d 428) (other citations omitted).

Therefore, the question of whether Gray's arrest for resisting arrest was lawful turns on whether

his arrest for the traffic stop was lawful.[8]

Because Gray has a raised a genuine issue of material fact as to whether his constitutional

rights were violated, the Court must determine whether Horton and Cox violated a "clearly

established right." It is clearly established that citizens are to be free from an unlawful arrest, and

Horton had no right to stop Gray if he came to a complete stop at the stop sign. See Johnston v.

City of Houston, Tex., 14 F.3d 1056, 1061 (5th Cir. 1994) ("[A]n arrest without either a properly

issued arrest warrant or probable cause gives rise to a § 1983 claim for relief."). As the Johnson

Court explained:

> Both sides have offered proper summary judgment evidence to corroborate their
> version of the facts. Clearly, a genuine dispute as to the material and operative
> facts of this case exists . . . Summary judgment is inappropriate unless plaintiff's
> version of the violations does not implicate clearly established law. This is not the
> case. Plaintiff's claims are neither novel nor obscure. . . . If [plaintiff's] facts prove

---

[8]In fact, Cox did not observe the traffic stop and thus the only basis that he apparently had
for arresting Gray was for resisting arrest.

to be true, [Defendants] are either "plainly incompetent or knowingly violated the law."

Id.; see also Tarver v. City of Edna, 410 F.3d 745, 753 (5th Cir. 2005) ("While the trier of fact might ultimately conclude that qualified immunity is warranted . . . Any credibility determination made between the officers' and [the plaintiff's] version of events is inappropriate for summary judgment.").

Accordingly, Horton and Cox are not entitled to qualified immunity on Gray's unlawful arrest and detention claim. Defendants' Motion for Summary Judgment on this claim is DENIED.

### b.    Excessive Force

Gray also alleges that he suffered a constitutional violation because Horton and Cox used excessive force in his arrest. His claim of excessive force is separate and distinct from his unlawful arrest claim and, therefore, the court must analyze the excessive force claim without regard to whether his arrest was justified. Freeman v. Gore, 483 F.3d 404, 417 (5th Cir. 2007) (The fact that an arrest was unlawful "does not, however, mean that any force used by [officers] to effectuate the arrest was necessarily excessive.").

Gray alleges that Cox placed handcuffs too tightly on him and that he told Horton numerous times en route to the Union Parish Detention Center that the handcuffs were too tight. Gray's wrists were "sore" for three days, but he did not seek medical treatment. He also alleges that Horton "verbally accosted" him and pointed his weapon at Gray.

Physical confrontations when a person is arrested or detained by an officer may result in injuries that do not rise to the level of a constitutional violation. The Fifth Circuit has failed to find excessive force when a plaintiff alleged that an officer placed handcuffs on her too tightly,

10

thereby causing her wrists to swell. See Glenn v. City of Tyler, 242 F.3d 307 (5th Cir. 2001). In Glenn, the Fifth Circuit stated that "handcuffing too tightly, without more, does not amount to excessive force." Id. at 314. Similarly, Gray's allegations that Horton verbally accosted and pointed his weapon at him are insufficient to rise to the level of a constitutional injury. See Bender v. Brumley, 1 F.3d 271, 274 n.4 (5th Cir. 1993) (citing McFadden v. Lucas, 713 F.2d 143, 146 (5th Cir.1983)) (As a general rule, threatening language and accompanying gestures, even if true, do not amount to a constitutional violation).

Even if Gray's arrest or detention was itself unlawful, his claim for excessive force fails as a matter of law.[9] Defendants' Motion for Summary Judgment on his excessive force claim against Horton is GRANTED, and this claim is DISMISSED WITH PREJUDICE.

### c.    Search and Seizure

Gray also contends that he was subjected to an unlawful search and seizure because Horton and Cox searched his car following his arrest, his car seats were slashed, and the vehicle was towed.

First, with regard to the slashing of his seats, even if the Court assumes that this arises to the level of a constitutional violation, Gray has failed to present any evidence to support his claim against Horton and Cox. With regard to his damage claim, Gray has no evidence that Horton and Cox caused the damage. In fact, the undisputed evidence is that approximately nine of Gray's friends and relatives were present at the scene of the arrest. Gray admitted that neither he nor any of his family or friends saw Cox cause the damage to the interior of the vehicle. Cox even

---

[9]This, of course, does not leave Gray without redress. His cause, as discussed below, is properly brought as battery under state law.

11

allowed Gray's girlfriend to roll up the window to the vehicle, yet she provided no testimony that she observed any damage to the vehicle prior to its towing. Thus, Defendants' Motion for Summary Judgment on Gray's claim for damage to his car is GRANTED, and this claim is DISMISSED WITH PREJUDICE.

With regard to the remaining claims, however, Horton and Cox had no authority to search and, more importantly, seize Gray's car unless his arrest was otherwise lawful. See Craig v. St. Martin Parish Sheriff, 861 F. Supp. 1290 (W.D. La. 1994) (Summary judgment was precluded because there were genuine issues of material fact as to whether there was "probable cause to associate [plaintiff's property] with criminal activity," there was a "meaningful interference" with the plaintiff's "possessory interest" in his property, and plaintiff's property rights were clearly established on the date of his detention) (citing Soldal v. Cook County, Illinois, 506 U.S. 56, 65 (1992); Payton v. New York, 445 U.S. 573, 586-87 (1980); United States v. Thomas, 973 F.2d 1152, 1156 (5th Cir.1992)).

Thus, genuine issues of material fact also preclude summary judgment on these claims, and Defendants' Motion for Summary Judgment is DENIED.

### D.    State Law Claims

#### 1.    False Imprisonment

In order to prevail on a claim of false imprisonment, a plaintiff must show that he was detained and that the detention was unlawful. Kennedy v. Sheriff of East Baton Rouge, 2005-1418 (La. 7/10/06); 935 So.2d 669, 690 (citation omitted). If an arrest is without probable cause, then it is unlawful. See Zerbe v. Town of Carencro, 2004-422 (La. App. 3 Cir. 10/6/04); 884 So.2d 1224, 1228.

12

In this case, the Court has determined that there a genuine issue of material fact for trial as to whether Horton and Cox had probable cause to arrest Gray. Thus, there is also a genuine issue of material fact for trial as to whether Gray was subjected to false imprisonment. Defendants' Motion for Summary Judgment on this claim is DENIED.

### 2.    Assault and Battery

Gray also contends that he was subjected to an assault and battery by his alleged unlawful arrest, the use of excessively tight handcuffs, and Horton's threatening him with his gun.

Under Louisiana law, battery is "[a] harmful or offensive contact with a person, resulting from an act intended to cause the plaintiff to suffer such a contact . . . " Caudle v. Betts, 512 So.2d 389, 391 (La. 1987). An assault occurs where one person threatens another and the threatening person has the present ability to carry out those threats so that the person threatened is "placed in reasonable apprehension of receiving an injury." Johnson v. English, 34-322 (La. 5 Cir. 12/20/2000); 779 So.2d 876, 880.

With regard to Gray's battery claim, there are two different standards to be applied depending whether an arrest is lawful. If an officer has probable cause for an arrest, then the arrest itself cannot be the basis of a battery claim, but the "use of excessive force in effecting the arrest becomes an actionable claim for damages." Zerbe, 884 So.2d at 1228 (citation omitted). "Excessive force transforms ordinarily protected use of force into an actionable battery, rendering the defendant officer and his employer liable for damages." Penn v. St. Tammany Parish Sheriff's Office, 2002-0893 (La. App. 1 Cir. 4/2/03); 843 So.2d 1157, 1161.

In contrast, if the arrest is unlawful, "then all force used to effectuate the arrest is excessive and constitutes a battery." LaBauve v. State, 618 So.2d 1187, (La. App. 3 Cir.,1993).

13

Having determined that there is a genuine issue of material fact as to whether Gray was

subjected to an unlawful arrest, then there is also a genuine issue of material fact as to whether he

suffered a battery.

The Court also finds that there is a genuine issue of material fact as to whether Gray was

in reasonable apprehension of suffering a battery.

Accordingly, Defendants' Motion for Summary Judgment on Gray's claims of assault and

battery is DENIED.

### 4.    Intentional Infliction of Emotional Distress

Finally, Defendants also move for summary judgment on Gray's claim of intentional

infliction of emotional distress.

A claim of intentional infliction of emotional distress is brought under Louisiana Civil

Code article 2315.

This cause of action was first recognized in White v. Monsanto, 585 So.2d 1205 (La.

1991). In that case, the Louisiana Supreme Court explained:

> One who by extreme and outrageous conduct intentionally causes severe
> emotional distress to another is subject to liability for such emotional distress, and
> if bodily harm to the other results from it, for such bodily harm.
>
> Thus, in order to recover for intentional infliction of emotional distress, a
> plaintiff must establish (1) that the conduct of the defendant was extreme and
> outrageous; (2) that the emotional distress suffered by the plaintiff was severe;
> and (3) that the defendant desired to inflict severe emotional distress or knew that
> severe emotional distress would be certain or substantially certain to result from
> his conduct.

Id. at 1209-10 (internal citations omitted).

In this case, Gray has not met his burden as a matter of law. Following this incident,

14

Gray did not seek medical treatment, psychiatric treatment, or counseling. Although he is not required to do so to prove that he suffered severe emotional distress, Gray also failed to offer any testimony which might suggest that his distress was "severe." Accordingly, Defendants' Motion for Summary Judgment is GRANTED, and Gray's claim is DISMISSED WITH PREJUDICE.

## III.    CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART. Defendants' Motion for Summary Judgment on Gray's claim against the Town of Bernice, § 1983 claims against Horton and Cox in their official capacity, § 1983 claim against Horton and Cox in their individual capacities for the use of excessive force, and intentional infliction of emotional distress claim is GRANTED, and those claims are DISMISSED WITH PREJUDICE. Defendants' Motion for Summary Judgment on Gray's remaining § 1983 claims and state law claims of assault, battery, and false imprisonment against Horton and Cox is DENIED. Those claims remain pending for trial.

MONROE, LOUISIANA this _____ 18 _____ day of _____ January _____, 2008.

_____

ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE

15